UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RYAN ABDUL-MALIK,

                Plaintiff,

-against-                              1:23-CV-1479 (LEK/PJE)

NEW YORK STATE POLICE
TROOPER NICHOLAS VASTO
And NEW YORK STATE POLICE
TROOPER JOHN S. KOLACH, III,

                Defendants.

---

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

On November 28, 2023, Plaintiff Ryan Abdul-Malik commenced this action against New York State Police Trooper Nicholas Vasto and an unknown defendant, Police Trooper John Doe. Dkt. No. 1 ("Complaint"). Defendant Vasto filed an answer to the complaint. Dkt. No. 6 ("Answer"). On April 1, 2024, the Plaintiff filed an Amended Complaint, naming New York State Police Trooper John S. Kolach III as the second defendant. Dkt. No. 13 ("Amended Complaint"). The Amended Complaint names two counts: excessive force, and false arrest and unlawful imprisonment, both under the Fourth and Fourteenth Amendments through 42 U.S.C. §1983. *Id.* at 4. Defendants then filed an answer to the Amended Complaint. Dkt. No. 18. ("Answer to Amended Complaint").

On May 30, 2025, the Defendants filed a motion for summary judgment. Dkt. No. 30-19 ("Motion"). Plaintiff filed a response. Dkt. No. 40-1 ("Response). Defendants filed a reply. Dkt. No. 44 ("Reply).

For the reasons that follow, Defendants' Motion is granted.

## II.    BACKGROUND

The following facts are undisputed, except where otherwise noted.

A.  *Plaintiff Walks on I-787 and Police are Contacted*

On April 30, 2023 Plaintiff Ryan Abdul-Malik and his mother Malakiya Beeks were in the car together, having just returned a rental car. Dkt. No. 30-8 ("Beeks Deposition) at 12–13. During an argument, Beeks pulled over on to the shoulder while on I-787. Dkt. No. 30-5 ("Plaintiff Deposition") at 21–23; Beeks Dep. at 16. Abdul-Malik then exited the vehicle. Beeks Dep. at 15–18; Plaintiff Dep. at 22–23. His mother called 911, sharing her concern that Plaintiff was trying to kill himself. Beeks Dep. at 18. At some point, Plaintiff expressed such desires. *Id.* at 16; Plaintiff Dep. at 23.

It is disputed as to whether Plaintiff walked in the middle of I-787, or on the shoulder. *Compare* Dkt. No. 40-1 ("Response to SMF") at 2; Plaintiff Dep. at 22–23 *with* Dkt. No. 30-1 ("Statement of Material Facts" or "SMF") ¶¶1–2; It is undisputed that his mother and multiple other individuals called 911, reporting that Plaintiff was in the middle of I-787. *See* Resp. to SMF at 2–3.

Plaintiff then returned to his mother's vehicle; she exited the highway. Beeks Deposition at 19; Plaintiff Dep. at 23. Plaintiff then left the vehicle again, on Morrison Avenue in Troy, and began walking up the hill on a sidewalk, towards his home. Beeks Dep. at 24–25; Plaintiff Dep. at 26.

Meanwhile, Defendants received reports of an individual walking on I-787, and both indicated that they would respond to the incident. Dkt. No. 30-7 ("Kolach Deposition") at 44; Dkt. No. 30-3 ("Vasto Declaration") ¶¶6–7. The Defendants were later advised that Plaintiff's location had changed to Morrison Avenue. Vasto Declaration ¶7; Dkt. No. 30-2 ("Kolach

Declaration") ¶7. Defendants were also given Plaintiff's mother's vehicle make and model. Vasto Declaration ¶7.

Initially, both Defendants passed Ms. Beeks' vehicle. Vasto Declaration ¶8; Kolach Declaration ¶8. They were told this by the dispatcher, turned around, and observed Plaintiff. Vasto Declaration ¶8; Kolach Dep. at 47.

### B. Plaintiff and Defendants Interact on Morrison Avenue

Upon his arrival, Defendant Kolach pulled over, exited his vehicle, and began attempting to speak with Plaintiff. *See* Kolach Declaration ¶¶9–10. Defendant Kolach was initially in front of the Plaintiff, and asked him, "You good? You good?" Dkt No. 30-15, video Axon_Body_3_Video_2023-04-30_1604_X60A0028E ("Kolach Footage") at 0:07:15–0:07:20. Ms. Beeks, standing behind Kolach and Plaintiff, near her car, responded, "No, he's not good." *Id*. Plaintiff continued walking up the hill. *Id.* at 0:07:18–0:07:25; Vasto Declaration ¶10; s*ee* Kolach Declaration ¶10. Defendant Kolach followed slightly behind Plaintiff, attempting to engage him in conversation. Dkt. No. 30-16, video Axon_Body_3_Video_2023-04-30_1603_X60A0171G ("Vasto Footage") at 0:08:49–0:08:54.

At this point, Defendant Vasto had also arrived, exited his vehicle, and stood in front of Plaintiff. Kolach Footage at 0:07:23. As Plaintiff approached Officer Vasto, Officer Vasto put out his hand as if to signal Plaintiff to stop. *See* Vasto Declaration ¶10; Kolach Declaration ¶10; Kolach Footage at 0:07:26–0:07:28. Defendant Vasto also tried to speak with Plaintiff, telling him "we've got to talk to you." Kolach Footage at 0:07:28–0:07:34; Vasto Footage at 0:08:53–0:09:02. Plaintiff tried to walk around Vasto, but Vasto blocked his path. *See* Kolach Footage at 0:07:28–0:07:34. Plaintiff continued walking forward, and his body and Defendant Vasto's hand

came into contact. *Id.*; Vasto Footage at 0:09:00–0:09:02. It is disputed whether the hand touched Plaintiff, or Plaintiff walked into the hand. SMF ¶17; Resp. to SMF ¶17.

At that point, Plaintiff became visibly aggravated. He cursed Officer Vasto, telling him not to touch him. *See* Kolach Footage at 0:07:36–0:07:44; Vasto Footage at 0:09:01–0:09:10. Defendant Vasto insisted that the officers needed to talk to the Plaintiff. *See* Vasto Footage at 0:09:01–0:09:10. Officer Kolach briefly touches Plaintiff's left arm. *See* Kolach footage at 0:07:41–0:07:43. Vasto's hand and Plaintiff's chest came into contact again, and Plaintiff pushed the hand off of him. *See* Vasto footage at 0:09:04–0:09:12.

Plaintiff then pulled his pants up, spuns around, clenched his hands into fists, and made a forceful forward motion with his right hand towards Defendant Vasto's arm.[1] Kolach Footage at 0:07:43–0:07:48. It is disputed whether Plaintiff "slapped" Defendant Vasto's arm. *See* Resp. to SMF ¶19. Defendants then grabbed Plaintiff's arms and brought him to the ground. Plaintiff Deposition at 27–28; Vasto Declaration ¶¶12–13; Kolach Declaration ¶¶13–14; *see* Vasto Footage at 0:09:14–0:09:26; Kolach Footage at 0:07:47–0:08:00. Defendants placed themselves on top of Plaintiff, who was face down. Plaintiff Deposition at 32–33; Kolach Footage at 0:08:00–0:08:13; Vasto Footage at 0:09:24–0:09:30. Defendants put Plaintiff in handcuffs. Kolach Footage at 0:08:06–0:08:30; Vasto Footage at 0:09:32–0:09:55; Plaintiff Deposition at 34; Vasto Declaration ¶14; Kolach Declaration ¶15.

### C. Plaintiff's Medical Care and Injuries

During and immediately following the takedown, Plaintiff yelled out in pain. Kolach Footage at 0:07:50–0:09:00. He complained about his head and his leg. *Id.*

---

[1] Insofar as Plaintiff contests this description, *see* Resp. To SMF ¶18, Plaintiff's account is contracted by the video evidence, s*ee* Kolach Footage at 0:07:43–0:07:48.

Plaintiff cut his head and was bleeding as a result of the takedown. Plaintiff Deposition at 35–36; s*ee* Vasto Declaration ¶15; Kolach Declaration ¶16; Dkt. No. 30-11 ("Kline Memorandum"); Beeks Dep. at 32–33. Defendants called EMS to the scene. Vasto Declaration ¶16; Kolach Declaration ¶17. Officer Kolach retrieved a wipe for the cut, which Ms. Beeks applied. Kolach Footage at 0:15:20–0:16:25. When the EMT arrived, Plaintiff refused any additional treatment. Dkt. No. 31 ("Medical Services Deposition"); Kolach Footage at 0:23:10–0:24:30; *see* Resp. to SMF ¶25 (disputing that Plaintiff "refused any medical treatment," by explaining that he accepted (only) a wipe for the cut to the forehead).

Plaintiff did not want to go to the hospital. Vasto Declaration ¶16, 18; Kolach Declaration ¶17, 19; Plaintiff Deposition at 41; *see* Medical Services Deposition; *see e.g.* Vasto Footage at 0:19:12–0:19:20 ("I'm not going to the hospital."). However, due to Defendants' concerns regarding Plaintiff's prior suicidality and decision to walk on I-787, he was transported to the hospital, in Officer Kolach's car. Kolach Declaration ¶18–21; Vasto Declaration ¶17–20. Defendants' decision was informed by a conversation Ms. Beeks had with Officer Vasto, in which she explained the background of the situation, including the I-787 incident and information regarding Plaintiff's mental health. *See* Vasto Footage at 0:10:55–0:15:21.

When he got back from the hospital, Plaintiff noticed his right hand hurting. Plaintiff Dep. at 49–50. Plaintiff later went to the doctor's office, where an x-ray was performed, finding a fracture in Plaintiff's right hand. *Id.* at 53; Beeks Deposition at 47–48.

## III.    LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instruct courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the

outcome of the suit under the governing law," and a dispute is "'genuine'… if the evidence is such that a reasonable jury could return a verdict for the nonmoving part." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, granting summary judgment is improper if there are genuinely disputed material facts. *Id.*; *see also Taggart v. Time, Inc.*, 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of facts could find in favor of the nonmoving party should summary judgment be granted."). The party seeking summary judgment bears the burden of informing a court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In attempting to defeat a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simple show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on mere conclusory allegations, speculation, or conjecture, *see Fischer v. Forrest*, 968 F.3d 216, 221 (2d Cir. 2020) (quoting *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996), and must present more than a mere "scintilla of evidence" supporting its claims, *Anderson*, 477 U.S. at 252. At the same time, a court must resolve all ambiguities and "draw all reasonable inferences in favor of the nonmoving party," *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000), and "eschew[s] credibility assessments[,]" *Amnesty Am. V. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)). Thus, a Court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of

fact, "not to deciding them." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

A Court may use video evidence to find that one party's version of the facts "is blatantly contradicted by the record, so that no reasonably jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). When this is the case, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380.

## IV.   DISCUSSION

Defendants aver they should be granted summary judgment on Plaintiff's excessive force, and false arrest and false imprisonment claims. Mot. at 6–16. Plaintiff argues that summary judgment should not be granted on these claims. *See generally* Resp.

### A.   Excessive Force

Defendants argue that Plaintiff's Fourth Amendment excessive force claims should be dismissed. Mot. at 6–9. For the reasons that follow, the Court agrees.

Fourth Amendment excessive force claims are reviewed under the standard of objective "reasonableness." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Reasonableness is understood by analyzing "the 'totality of the circumstances,'" not just merely the moment force is used. *Barnes v. Felix*, 605 U.S. 73, 80 (2025) (quoting *Graham*, 490 U.S. at 427–28). To determine whether the force applied was unreasonable, the Court considers the following factors:  "the severity of the crime," "whether the suspect pose[d] an immediate threat to the safety of the officers or others," and "whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.  The balancing of these factors is imprecise, and "[a]ll that can realistically be expected [of a reviewing court] is to make some assessment as to the extent to which each relevant factor is present and then somehow make an aggregate assessment of all the

factors." *Brown v. City of New York*, 798 F.3d 94, 102 (2d Cir. 2015). Under *Graham*, the officers' "underlying intent or motivation" is irrelevant to the reasonableness inquiry. *See Graham*, 490 U.S. at 397.

Moreover, the extent of the injury is also relevant for courts' consideration of an excessive force claim. *Abreu v. Nicholls*, 368 Fed.App'x. 191, 193 (2d Cir. 2010) ("[T]he extent of injury is a relevant factor."). On one end of the spectrum, "[r]easonable force does not become unconstitutional merely because it caused the plaintiff serious injury." *Walker v. Thibault*, 2023 WL 7701726, at *4 (N.D.N.Y. Nov. 14, 2023), *aff'd*, 2025 WL 294507 (2d Cir. Jan. 24, 2025) (quoting *Otero v. Town of Southampton*, 194 F. Supp. 2d 167, 180 (E.D.N.Y. 2002)). On the other end of the spectrum, courts in this Circuit sometimes impose a *de minimis* requirement on the injury caused by the use of force. *See Lemmo v. McKoy*, 2011 WL 843974, at *5 (E.D.N.Y. Mar. 8, 2011) (arguing that injuries cannot merely be *de minimis*, if a Fourth Amendment excessive force claim is to succeed); *but see Barcomb v. Kraeger*, 2016 WL 2644885, at *4 (D. Conn. May 5, 2016) (rejecting such a requirement).

"Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004).

In this case, the balancing test favors Defendants, and granting them summary judgment is therefore appropriate.

The crime's severity, *see Graham*, 490 U.S. at 396, weighs in favor of Defendants. The main reason for the confinement was Plaintiff's suicidality, which is not a crime in New York. *Washington v. Glucksberg*, 521 U.S. 702, 775 n.13 (1997).

The threat posed to the Defendants by the Plaintiff and his resisting arrest, *see Graham*, 490 U.S. at 396, favors Defendants. Though it is disputed whether "Plaintiff . . . slapped at Trooper Vasto's extended arm," Resp. to SMF ¶¶19–20, the footage clearly shows Plaintiff making forceful forward contact between his hand and Vasto's arm. *See* Vasto Footage at 0:09:10–0:09:15; Kolach Footage at 0:07:44–0:07:48. When Officer Vasto grabbed Plaintiff's arm and began to take him down, Plaintiff had just swung his right hand towards Defendant Vasto's arm. Kolach Footage at 0:07:45–0:07:50. Plaintiff had thus exhibited a willingness to use physical force against the officers, putting their safety at risk. Plaintiff's argument that "[t]he body-camera footage shows Plaintiff posed no immediate threat to anyone – much less to the officers – before defendants forcibly took him to the ground" is thus plainly contradicted by said body-camera footage. *Compare* Resp. at 6 *with* Vasto Footage at 0:09:10–0:09:15, *and* Kolach Footage at 0:07:44–0:07:50.

In balancing these factors, the Court recognizes the need for officers to maintain control of the situation. *See* Alvear v. Kamel, No. 18CV4255NGGCLP, 2023 WL 5593914, at *7 (E.D.N.Y. Aug. 29, 2023). The Plaintiff, at the point the Defendants took him down, was distressed, angry, and becoming violent. *See* Kolach Footage at 0:07:45–0:07:50. The use of some force, by Defendants, to secure Plaintiff's person at that moment is objectively reasonable. *Cf. Lieberman v. City of Rochester,* 2011 WL 13110345, at *4 (W.D.N.Y. Apr. 29, 2011), *aff'd,* 558 F. App'x 38 (2d Cir. 2014) ("The right to make a lawful arrest carries with it the right to use reasonable force to effectuate that arrest.").

The Court concludes that no reasonable fact finder could find that taking Plaintiff down, handcuffing him, and then proceeding to secure transport for him to seek evaluation for his mental health issues, was constitutionally unreasonable.

9

The Court finds two aspects of the encounter particularly convincing. First, there is no indication that Defendants used more force than was necessary to take Plaintiff down. *See*, Plaintiff Dep. at 27–28; Vasto Declaration ¶¶12–13; Kolach Declaration ¶¶13–14; Vasto Footage at 0:09:14–0:09:26; Kolach Footage at 0:07:47–0:08:00. The Court notes the lack of gratuity in the force used. *Douglas v. City of New York*, No. 18 CIV. 9327 (KPF), 2022 WL 294075, at *9 (S.D.N.Y. Feb. 1, 2022) (reasoning that the force used was not gratuitous and weighing that fact in favor of the defendants). "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. The force used by Defendants was the "degree of physical coercion [necessary] to effect [the arrest]," and was therefore constitutionally permissible.

Second, Defendants are not alleged to have taken any action that would have broken his hand, other than bringing him to the ground. The breaking of plaintiff's hand is the most severe of plaintiff's injuries. *See* Amend. Compl. ¶10. It fulfills any *de minimi*s requirement. *See Coffey v. Broome Cnty.*, 2025 WL 2391724, at *6 (N.D.N.Y. Aug. 18, 2025) (holding that a fractured bone is more than a *de minimis* injury). The Court assumes, for purposes of this Motion, that the Plaintiff broke his hand during his encounter with Defendants.[2] "While the fractured . . . bone is . . . serious, it is not a surprising result of a reasonable police response to [plaintiff's] conduct." *Flanigan v. Town of Colchester*, 171 F.Supp.2d 361, 366 (D. Vt. 2001). The mere fact of the injury is not dispositive. *See id.* at 365–66. (granting summary judgment to

---

[2] Defendants' Statement of Material Facts could allow one to infer that Plaintiff broke his hand punching a sign in the hospital bathroom. *See* SMF ¶¶37–39.  Plaintiff disputes this, arguing Defendants broke his hand. Resp. at 7–8. As this is Defendants' motion for summary judgment, the Court interprets the facts in the light most favorable to the Plaintiff.

defendant officers, who broke plaintiff's bone during a takedown arrest).  The question for the Court is whether taking Plaintiff down in the manner done by Defendants was reasonable.

In similar cases, courts in this Circuit have granted summary judgment to defendants. *See Liebermann v. City of Rochester*, 2011 WL 13110345, at *1, 5 (finding that in a volatile situation following a "scuffle", it was not excessive force for defendant police officers to "throw[] [the plaintiff] to the ground and handcuff[] [him]."; *Brayshaw v. City of Burlington,* 2015 WL 1523019, at *2, 10–12 (D. Vt. Apr. 3, 2015) (finding that it was not excessive force when a plaintiff "sw[ung] his free arm in such a manner that he could potentially strike [the defendant officer]," and the officer responded by taking the plaintiff to the ground, resulting in a head laceration and fractured bones)

In the extant case, Plaintiff also "sw[ung] his . . . arm in such a manner that he could potentially strike" Defendant Vasto, was taken down, and suffered similar injuries as the *Brayshaw* plaintiff. *Compare id.* at 2, *with* SMF ¶¶25, 40. The Defendants in this case, like the defendant in *Brayshaw*, are therefore also entitled to summary judgment on the excessive force claim.[3] The excessive force claim is therefore dismissed.

### B.  False Arrest/ Unlawful Imprisonment

"False arrest and false imprisonment . . . are two names for the same tort." *Blanco v. Success Acad. Charter Schs., Inc.*, 722 F. Supp. 3d 187, 209 (S.D.N.Y. 2024) (quoting *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004)). Therefore, these claims are analyzed together.

---

[3] Defendants argue in the alternative that they are entitled to qualified immunity on the excessive force claim. *See* Mot. at 14–16. As this Court rules for Defendants on the merits of the excessive force claim, it need not evaluate the qualified immunity defense. *See Bettis v. Bean*, 2015 WL 5725625, at *14 (D. Vt. Sept. 29, 2015).

11

Defendants make three arguments as to why they should be granted summary judgment on the false arrest/false imprisonment claims. First, they argue that they did not arrest Plaintiff. Mot. at 10–11. Second, they argue that they had probable cause to detain and transport Plaintiff under New York Mental Hygiene Law §9.41 ["MHL §9.41"]. *Id.* at 11–13. Third, they argue they should be granted qualified immunity for the false arrest / false imprisonment claims. *Id.* at 14–16.

For the reasons that follow, this Court grants Defendants summary judgment on Plaintiff's false arrest and false imprisonment claims, as they had probable cause to detain Plaintiff.

"In analyzing § 1983 claims for unconstitutional false arrest, [courts] have generally looked to the law of the state in which the arrest occurred." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006) (quoting *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir.2004)). "Under New York law, the elements of a false arrest and false imprisonment claim are: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (quoting *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016) (per curiam)). This Court proceeds by assuming that defendants confined plaintiff, and therefore focuses its analysis on whether the confinement was privileged.

A confinement is privileged if it is done with legal authorization. *See Hernandez*, 939 F.3d at 199. Specifically, if an individual is taken into custody pursuant to MHL §9.41, the confinement is privileged. *Glowczenski v. Taser Int'l Inc.*, 2010 WL 1936200, at *5–6 (E.D.N.Y. May 13, 2010) ("If applicable, section 9.41 would be a privilege that justified the police taking

[the plaintiff] into custody."); *see Kerman v. City of New York*, 261 F.3d 229, 240 (2d Cir. 2001) (applying the Fourth Amendment's objective reasonableness standard to this provision).

MHL §9.41 states in relevant part:

Any . . . police officer who is a member of the state police or of an authorized police department . . . may take into custody any person who appears to be mentally ill and is conducting themself in a manner which is likely to result in serious harm to [the person] or others. Such officer may direct the removal of such person or remove such person to any hospital specified in subdivision (a) of section 9.39 of this article.

MHL §9.41(a). "[L]ikely to result in serious harm" is defined in the statute as "a substantial risk of physical harm to the person as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that the person is dangerous to themselves." MHL §9.01(c).

To detain someone under MHL §9.41, officers must have "probable cause." *Bayne v. Provost*, 2005 WL 1871182, at *6 (N.D.N.Y. Aug. 4, 2004). "[P]robable cause exists when officers 'have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Id.* (quoting *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999)). Therefore, the crux of the inquiry is

whether the facts and circumstances known to [the police officers] at the time they determined to take Plaintiff into custody were sufficient to warrant a person of reasonable caution in the belief that Plaintiff might be 'mentally ill and conducting himself in a manner likely to result in serious harm to' himself as those terms are defined by the MHL.
*Id.* at 7.

Defendants argue that summary judgment should be granted on Plaintiff's false arrest/ false imprisonment claim, as Defendants had probable cause to detain Plaintiff under MHL §9.41. Mot. at 11–12. They argue that probable cause obtained "based upon the information [Defendants] received regarding the fact that Plaintiff had gotten out of his mother's vehicle in

13

the middle of the interstate along with statements provided to Defendants by Plaintiffs [sic] mother, indicating that Plaintiff made verbal statements to her about wanting to end his own life." Mot. at 13.  Plaintiff, conversely, argues that Defendants lacked probable cause, as the dispatch reports were unverified, Defendants "did not confirm Plaintiff was the person described in the dispatch," and Plaintiff's interaction with Defendants "would [not] lead a reasonable person to believe he posed a present danger to himself or others." Resp. at 10–11. Plaintiff's dispute that he had walked in the middle of I-787, Resp. ¶9, and this Court, for purposes of this motion, infers that Plaintiff did not walk in the middle of the highway.

Drawing all reasonable inferences in favor of Plaintiff, as is required at summary judgment, this Court is persuaded by Defendants' argument that probable cause to detain Plaintiff existed. From Defendants' perspective, there was "a substantial risk of physical harm" to Plaintiff, as they had reason to believe he had walked in the middle of I-787. *See* SMF ¶7. Officer Vasto had been informed that Plaintiff's presence in I-787 appeared to be a "mental health issue." Vasto Footage at 0:04:01–0:04:04. Ms. Beeks called out to Defendant Kolach, "No, he's not good," when he asked Plaintiff how he was. *Supra* section II(B). "A reasonable police officer is justified is relying upon a citizen's warning that another person has threatened suicide." *Bayne*, 2005 WL 1871182, at *7. It follows that a reasonable police officer is justified in relying upon reports of suicidal behavior. A reasonable officer in the Defendant officers' position, having been warned of Plaintiff's behavior on I-787, would infer that there was a "substantial risk" that Plaintiff was going to harm himself.

Plaintiff argues that "when defendants arrived on Morrison Ave, Plaintiff was merely walking on the sidewalk. . . . He was not harming himself, harming others, or breaking any laws." Resp. at 11. While that may be true, it is insufficient to refute the presence of probable

14

cause regarding the threat posed by Plaintiff to himself. Mere minutes passed between the officers being told about Plaintiff, to the officers encountering him. *See* Vasto Footage at 0:00:40 (Defendant Vasto reporting that he is en route), 0:08:45 (Defendant Vasto exits vehicle); Kolach Footage at 0:01:55 (Officer Kolach acknowledging report of an individual walking in the middle of I-787), Kolach Footage at 0:07:12 (Officer Kolach leaves the vehicle). An officer of reasonable caution could infer that Plaintiff's suicidality remained throughout that period, even if, at the moment they encountered him, Plaintiff was walking properly on the sidewalk.

Plaintiff argues that Defendants did not know that the person they interacted with was the same person who had allegedly walked on I-787. Resp. at 10–11. But Defendants need only have probable cause to detain someone, not absolute certainty. *See Bayne*, 2005 WL 1871182, at *6. Defendants had multiple pieces of evidence to reach the conclusion that Plaintiff and the person who had apparently walked on I-787 were the same person. Police dispatch had told Defendants that plaintiff was on Morrison Avenue, where he was found. *See Supra* Part II(A–B). Police dispatch gave Defendants the make and model of Ms. Beeks' car. *Supra* Part II(A). Police dispatch told Defendants when they had passed Ms. Beeks' vehicle. *Id.* Defendants' body camera footage shows no other cars pulled over on Morrison Avenue, or any other pedestrians. *See, e.g.*, Vasto Footage at 0:08:45–0:08:47. A person of reasonable caution would conclude, correctly, that Plaintiff was the person who had allegedly walked in the middle of I-787.

Plaintiff analogize to *Kerman*, arguing that it provides support for declining to grant summary judgment in this case. Resp. at 10; *see* 261 F.3d 229. There are significant differences between the facts that *Kerman* relied on in refusing to grant summary judgment, and the extant case. The *Kerman* court relied on the lack of corroboration of the 911 call, which had mentioned a gun, yet officers failed to find one. 261 F.3d at 240. In the extant case, there was no failure to

15

corroborate allegations from the 911 call. *See Supra* section II(A–B). Additionally, in *Kerman*, the court found it significant that officers had hung up on a doctor who could have provided information about the plaintiff's medical condition. *Id.* at 241. For the *Kerman* court, this showed a failure to investigate. *Id.* No analogous situation arose in this case. In fact, as the record demonstrates, the Officers investigated the situation and received corroborating evidence—Ms. Beeks saying that her son was "not good"—even after arriving on scene. Kolach Footage at 0:07:15–0:07:20.

Defendants reasonably believed that Plaintiff had walked in the middle of I-787 as part of a mental health issue. That alleged conduct is sufficient to trigger §9.41, allowing police to detain someone for the detainee's own safety. Therefore, Defendants are entitled to summary judgment on the false arrest and false imprisonment claims.[4]

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' motion for summary judgment, Dkt. No. 30, is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's amended complaint, Dkt. No. 13, is **DISMISSED without prejudice**; and it is further

**ORDERED**, that the Clerk is respectfully directed to close this action; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

---

[4] As this Court finds that the arrest was constitutionally permissible, it does not reach the qualified immunity argument. *See Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) (declining to reach qualified immunity on a false arrest claim, after holding that there was probable cause to make an arrest).

**IT IS SO ORDERED.**

DATED:     March 31, 2026
             Albany, New York

_____
LAWRENCE E. KAHN
United States District Judge

17